IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

FRED COLE                          §                    PLAINTIFF
                                   §
v.                                 §        Civil No. 1:05CV479HSO-JMR
                                   §
NOBLE DRILLING CORPORATION         §                    DEFENDANT

ORDER AND REASONS DENYING MOTION FOR SUMMARY
JUDGMENT OF PLAINTIFF FRED COLE AND GRANTING
MOTION FOR SUMMARY JUDGMENT OF DEFENDANT
NOBLE DRILLING CORPORATION

BEFORE THE COURT are the Motion for Summary Judgment [58-1]

["Plaintiff's Motion"] filed April 20, 2007, in the above-captioned cause by Plaintiff,

Fred Cole ["Plaintiff" or "Cole"] and the Motion for Summary Judgment [50-1]

["Defendant's Motion"] filed April 20, 2007, in the above-captioned cause by

Defendant, Noble Drilling Corporation ["Defendant" or "Noble"].  In opposition to

the Plaintiff's Motion for Summary Judgment [58-1], Defendant has filed a

Response [63-1].   In opposition to Defendant's Motion for Summary Judgment [50-

1], Plaintiff has filed a Response [62-1], and Defendant has filed a Rebuttal [64-1] in

support of its Motion.  After consideration of the submissions and the relevant legal

authorities, the Court finds that Plaintiff's Motion for Summary Judgment [58-1]

must be denied, and that Defendant's Motion for Summary Judgment [50-1] is well

taken and should be granted.

I. FACTS AND PROCEDURAL HISTORY

On April 2, 2003, Defendant and QCI Marine Offshore, LLC ["QCI" or

"Contractor"] entered into a Master Service Contract [the "Contract"], adding QCI

to Defendant's approved list of contractors.  *See* Contract, Ex. "A" to Def.'s Mot. for Summ. J. at p.1.  The Contract states, in relevant part, that it "shall control and govern all work performed, and/or goods or equipment provided, by contractor for Noble under subsequent verbal and/or written work orders."  *Id.*

Subsequent to execution of the Contract, two proposal documents from QCI were submitted to and accepted by Defendant for work aboard the Noble Lester Pettus, a semi-submersible drilling rig, describing a scope of work to be performed by QCI in refurbishing the vessel.  The first proposal document was dated March 30, 2005, with reference number 05-130, while the second was dated June 23, 2005, with reference number 05-020R2.  *See* Proposal Document 05-130, Ex. "2" and Proposal Document 05-020R2, Ex. "3" to Depo. of Chris Hase, Ex "B" to Def.'s Mot. for Summ. J.

The Noble Lester Pettus was in Pascagoula, Mississippi, between June and November 2005 for refurbishment of the living quarters and other projects to be completed by QCI aboard the vessel.  Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 3; Def.'s Resp. to Pl.'s Statement of Uncontested Facts, p. 2.  During the refurbishment, Plaintiff was employed by QCI as a plumber and assisted with the work being performed on the Noble Lester Pettus pursuant to QCI's Contract with Defendant.  *See* Pl.'s Compl., ¶ 5; Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 1; Def.'s Resp. to Pl.'s Statement of Uncontested Facts, p. 1.  On October 5, 2005, while carrying supplies down an interior stairwell between the main and tween decks of the Noble Lester Pettus,

Plaintiff alleges he fell down the stairs and was injured.  *See* Pl.'s Compl., ¶ 6; Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶¶ 5-6; Def.'s Resp. to Pl.'s Statement of Uncontested Facts, pp. 2.  It is undisputed that the interior stairwell in question was an area of the vessel in which work was to be done by QCI under its Contract with Defendant.  Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶¶ 5-6; Def.'s Resp. to Pl.'s Statement of Uncontested Facts, p. 2.  At the time of Plaintiff's injury, the original handrail in the subject stairwell had been removed by QCI and replaced with a 2" x 4" temporary wooden handrail.   Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶¶ 7-8; Def.'s Resp. to Pl.'s Statement of Uncontested Facts, p. 3. Plaintiff alleges that the handrail broke away from the wall causing Plaintiff to fall down the stairs and suffer severe injuries.  *See* Pl.'s Compl., ¶ 6.

Plaintiff filed his Complaint on October 19, 2005, seeking damages under the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 905(b) ["LHWCA"] and general maritime law, for injuries that he claims were caused by the Defendant's negligence in failing to adequately maintain and repair the handrail. *See* Pl.'s Compl., ¶ 7.  Plaintiff filed an Amended Complaint on November 7, 2005, correcting the address of service of process for Defendant and incorporating by reference all paragraphs, subparagraphs, counts, and relief requested in his original Complaint.[1]   Plaintiff now seeks summary judgment on the grounds that

_____

[1]Because Plaintiff incorporates by reference his original Complaint into his Amended Complaint, without fully reproducing the original Complaint therein, references in this Order will be

Defendant was negligent *per se*, and Defendant seeks summary judgment and
dismissal of Plaintiff's claims against it.

## II. DISCUSSION

A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits any party to a civil action to move
for summary judgment upon a claim, counterclaim, or cross-claim as to which there
is no genuine issue of material fact and upon which the moving party is entitled to
prevail as a matter of law.  Summary judgment

> is not a catch penny contrivance to take unwary litigants into its toils
> and deprive them of a trial, it is a liberal measure, liberally designed
> for arriving at the truth.  Its purpose is not to cut litigants off from
> their right of trial by jury if they really have evidence which they will
> offer on a trial, it is to carefully test this out, in advance of trial by
> inquiring and determining whether such evidence exists.

*Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir. 1940).

A party seeking summary judgment bears the initial burden of identifying
those portions of the pleadings and discovery on file, together with any affidavits,
which it believes demonstrate the absence of a genuine issue of material fact.  *See
Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant carries its
burden, the burden shifts to the non-movant to show that summary judgment
should not be granted. *See id.* at 324-25.  The non-moving party may not rest upon
mere allegations or denials in its pleadings, but must set forth specific facts
showing the existence of a genuine issue for trial.  *See Anderson v. Liberty Lobby,*

---

to the paragraphs of the original Complaint unless otherwise noted.

*Inc.,* 477 U.S. 242, 256-57 (1986).

B.  Plaintiff's Motion for Summary Judgment

In his Complaint, Plaintiff seeks damages under the LHWCA and general maritime law for injuries that he claims were caused by Defendant's negligence in failing to adequately maintain and repair the handrail. *See* Pl.'s Compl., ¶ 7. Because Plaintiff was not an employee of Defendant, which owned the vessel, Plaintiff seeks damages against Defendant under section 905(b) of the LHWCA, which provides a longshoreman's exclusive recovery against a vessel owner for injuries sustained by a longshoreman on the vessel.  *See* 33 U.S.C. § 905(b).

While the LHWCA historically allowed broad recovery for a longshoreman against a vessel owner, the LHWCA was amended in 1972.  The 1972 Amendments by Congress abolished a longshoreman's right to recover from a vessel owner for unseaworthiness of the vessel, but preserved his right under section 905(b) of the LHWCA to recover from the vessel owner for negligence, to the exclusivity of other theories of recovery.  *See Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 165 (1981); *see also Pluyer v. Mitsui O. S. K. Lines, Ltd.*, 664 F.2d 1243, 1246 (5th Cir. 1981).  While section 905(b) des not specify what acts or omissions constitute actionable negligence, *see Pluyer*, 664 F.2d at 1246, the scope of the duty owed by a vessel owner to longshoremen was left to "be resolved through the application of accepted principles of tort law and the ordinary process of litigation." H.R.Rep. No. 92-1441, 92nd Cong., 2nd Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 4698, 4704.  The Supreme Court and the Fifth Circuit have provided guidance in

this regard.

Plaintiff's Motion asks the Court to grant summary judgment on Defendant's alleged negligence *per se*.  In order to prevail in an action for negligence *per se*, Plaintiff must prove that he was a member of the class sought to be protected under the applicable statute, that his injuries were of a type sought to be avoided, and that violation of the statute proximately caused his injuries.  *See Duhon v. Trustmark Bank*, 2007 WL 627889, *3 (S.D. Miss. 2007) *(citing Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So. 2d 777, 787 (Miss. 2004)).  In the present case, Plaintiff cites two codifications that Defendant allegedly violated, and for which Defendant should be held negligent *per se*–the American Bureau of Shipping ["ABS"] standards and Occupational Safety and Health Administration ["OSHA"] regulations.  *See* Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. Negligence *Per Se*, pp. 4-5.

As a threshold matter, the Court must determine whether ABS standards and/or OSHA regulations can be the basis of a negligence *per se* claim.  "Negligence *per se*...is a theory by which statutes are used to establish the appropriate standard of care."  *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi*, 390 F.3d 400, 407 (5th Cir. 2004).  "When the doctrine of negligence per se applies, the general standard of care of a reasonable man is replaced by a specific rule of conduct established in a statute or regulation."  *Dougherty v. Santa Fe Marine, Inc.* 698 F.2d 232, 235 (5th Cir. 1983) (internal citations omitted).  "To say that violation of a statute is negligence per se is to say that 'an unexcused violation is conclusive

on the issue of negligence.'" *Lowe v. General Motors Corp.,* 624 F.2d 1373, 1380 (5th Cir. 1980) (*quoting* W. PROSSER, LAW OF TORTS at 200 (4th ed. 1971)).  The former Fifth Circuit "often held that violation of a Federal law or regulation can be evidence of negligence, and even negligence *per se.*"  *Lowe v. General Motors Corp.*, 624 F.2d 1373, 1379 (5th Cir. 1980) (*citing Reyes v. Vantage Steamship Company, Inc.,* 609 F.2d 140, 143 (5th Cir. 1980) (Coast Guard regulations); *Manning v. M/V "Sea Road,"* 417 F.2d 603, 608 (5th Cir. 1969) (Safety and Health Regulations for Longshoring)).

The ABS standards cited by Plaintiff, "Guidance Notes for the Application of Ergonomics to Marine Systems," dated April 2003, are not legislative enactments, nor are they laws or regulations.  *See Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 709 (Former 5th Cir. 1981) (requiring a "legislative enactment" to establish negligence *per se*) (*citing* W. PROSSER, THE LAW OF TORTS § 36, at 192). Plaintiff has not provided sufficient legal authority to support this contention that violation of these standards is a proper basis for negligence *per se*.  As such, the purported violation of an ABS standard cannot constitute negligence *per se* in this case.

Even assuming that violation of such standards could constitute negligence *per se*, the very language of the ABS standards cited uses permissive terms, such as "should" and "preferably," rather than mandatory language, such as "shall" and "required," which would connote a mandatory obligation. Uses of such permissive terms in the ABS standards do not implicate negligence *per se*, as there is no mandatory obligation affirmatively placed upon any party.

Regarding the purported OSHA violations, Plaintiff cites 29 CFR § 1926.1052(c)(5), (8)-(9), and (11).  The former Fifth Circuit has stated, "[n]either [OSHA's] express provisions nor the regulations adopted pursuant to its authority create a civil cause of action against either a plaintiff's employer or a third party who is not the plaintiff's employer."  *Melerine*, 659 F.2d at 709 (internal citations omitted).  In *Melerine*, the plaintiff argued that violation of OSHA regulations established the defendant's negligence *per se* in a cause of action given to him by general maritime law, and accordingly, the Court proceeded to a negligence *per se* analysis.   In this instance, the Court will address Plaintiff's contention that Defendant is negligent *per se* for purported violations of OSHA regulations with regard to the stairwell where Plaintiff was injured.

Under a negligence *per se* analysis for the alleged violations of OSHA regulations, Plaintiff first must prove that he was a member of the class sought to be protected under the regulation.  *See Duhon*, 2007 WL 627889, at *3.   In this regard, while the *Melerine* Court applied a negligence *per se* analysis for alleged OSHA violations, it noted that in the Fifth Circuit, the class protected by OSHA regulations comprises only an employer's own employees.  *See Melerine*, 659 F.2d at 712.  Thus, the Court held that the OSHA regulations at issue in *Melerine* could not define the duty owed by the defendant, the employer of a crane operator, which crane injured the plaintiff, to the plaintiff, the employee of another company.  In the present case, it is undisputed that Plaintiff was not an employee of Defendant, but rather, was an employee of QCI.  *See* Statement of Uncontested Facts in Support of

-8-

Pl.'s Mot. for Summ. J., ¶ 1. Because Plaintiff was not an employee of Defendant, he is not a member of the class sought to be protected under the OSHA regulations, and his negligence *per se* claims based on Defendant's purported violation of OSHA regulations must fail for this reason alone. Summary judgment in favor of Plaintiff on the issue of Defendant's alleged negligence *per se* would be improper as a matter of law.

Furthermore, the OSHA regulations cited by Plaintiff, 29 CFR § 1926.1052(c)(5), (8)-(9), and (11), are found in Part 1926, "Safety and Health Regulations for Construction," Subpart X, "Stairways and Ladders," of Title 29 of the Code of Federal Regulations (CFR). Authority for these regulations derives, in part, from the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 3701, *et seq.*, which applies to federal service contracts and federal and federally-assisted construction contracts over $100,000. *See* 40 U.S.C. § 3701(b). Assuming that Plaintiff was an employee of Defendant, Plaintiff has presented no valid argument or evidence that the OSHA regulations he cites are applicable in this case, and thus, Plaintiff has not established that these regulations establish the standard of care owed Plaintiff.

Plaintiff's Memorandum in Support of his Motion alternatively requests a jury instruction on the alleged violations of these ABS standards and OSHA regulations. Such a request is premature at this stage of the case, and is also moot based on the Court's holding *infra*.

C.  Defendant's Motion for Summary Judgment

In its Motion, Defendant argues that there is no genuine issue as to any material fact in this matter and that it is entitled to judgment as a matter of law. *See* Def.'s Mot. for Summ. J., p. 2.

As discussed previously herein, under the express provisions of section 905(b) of the LHWCA, a longshoreman is entitled to recover from a vessel owner only for the vessel owner's negligence.  General principles of negligence guide the analysis of a maritime tort case.  *See Casaceli v. Martech Intern., Inc.,* 774 F.2d 1322 (5th Cir. 1985) (*citing Daigle v. Point Landing, Inc.,* 616 F.2d 825, 827 (5th Cir. 1980) (internal citation omitted)).   Negligence and negligence *per se* claims both fall under the general umbrella of negligence in tort.  As discussed earlier, the ABS standards and OSHA regulations for which Defendant purportedly should be held negligent *per se* cannot be the basis of a negligence *per se* claim, in part because it is undisputed Plaintiff was not an employee of Defendant.  *See Melerine*, 659 F.2d at 712.

Regarding any other negligence claims Plaintiff asserts against Defendant, in order to establish a *prima facie* case of general negligence, Plaintiff must prove the existence of a duty on the part of Defendant to conform to a specific standard of conduct, a breach of that duty, that the breach of duty was the proximate cause of Plaintiff's injury, and that damages to Plaintiff resulted.  *See Dickey v. Baptist Memorial Hospital-North,* 146 F.3d 262, 265 (5th Cir. 1998).

With respect to any duty owed to Plaintiff by Defendant, the seminal case

-10-

interpreting section 905(b) of the LHWCA is *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156 (1981).  Subsequent decisions in the Fifth Circuit have interpreted *Scindia* as delineating three duties owed by a vessel owner (Defendant) to an employee (Plaintiff) of a stevedore. These duties include (1) the "turnover duty," (2) the "active control duty," and (3) the "duty to intervene."  *See Moore v. M/V ANGELA*, 353 F.3d 376, 380 (5th Cir. 2003) (*citing Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994) (internal citation omitted)).  The Fifth Circuit has held that these duties also apply to LHWCA-covered employees of independent contractors other than stevedores, such as QCI in this case.  *See Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982).  Each duty owed by Defendant to Plaintiff will be discussed in turn.

      1.    <u>"Turnover Duty"</u>

In what may be identified as the first *Scindia* duty, the Supreme Court stated that

> the vessel owes to a stevedore and its longshoremen employees the duty of exercising due care 'under the circumstances.'  This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property....

*Scindia*, 451 U.S. at 166-67 (*citing Federal Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 415 (1969)).

A corollary of this first *Scindia* duty is that the vessel has a duty to warn the stevedore of any hazardous conditions on the ship or with respect to the vessel's

equipment of which the stevedore cannot be expected to be aware, but of which the vessel has or should have knowledge.  *See id.*

A vessel owner is charged with the duty of warning the stevedore and its employees about

> any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known to the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

*Scindia*, 451 U.S. at 167.

Under this turnover duty, "there is no requirement that the vessel have actual knowledge of the danger presented before liability will attach."  *Woods v. Sammisa Co., Ltd.*, 873 F.2d 842, 851 (5th Cir. 1989).  "All that is required is that the injury that results from the failure to exercise due care be reasonably foreseeable...."  *Id.* at 852.

In the present case, Plaintiff has asserted two causes of his alleged accident in the stairwell aboard the Noble Lester Pettus:  the purported lack of proper tread on the steps in the stairwell and the 2" x 4" temporary wooden handrail.  *See, i.e.,* Pl.'s Compl., ¶ 6 (asserting that Plaintiff "was carrying supplies down the stairs of the 'Noble Lester Pettus' when the hand rail broke away from the wall causing [him] to fall down the stairs"); Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 37 (stating that Plaintiff "testified at his deposition that he slipped and lost his grip on the handrail, and fell down the stairs..."); Statement of

Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 38 (stating that
"[p]hotographs also show that the rail broke loose which also contributed to the
serious nature of Cole's fall, and further evidence that the handrail was not
properly secured to the bulkhead..."); Statement of Uncontested Facts in Support of
Pl.'s Mot. for Summ. J., ¶ 39 (stating that "the photographs also show that no
temporary tread covered the bare metal, which would have added both width and a
non-skid surface that could have prevented Cole's fall"); Statement of Uncontested
Facts in Support of Pl.'s Mot. for Summ. J., ¶ 36 (stating that "[a]t the time of the
accident, the lack of a tread with a proper grip created another unsafe condition
which caused and/or contributed to Cole's fall and severe injuries, especially since
Cole slipped while going down the stairs.")

Defendant disputes how the incident occurred, as there were no witnesses to
the accident.  Def.'s Resp. to Pl.'s Statement of Uncontested Facts, p. 3.
Nevertheless, in accordance with summary judgment protocol, the Court resolves
the disputed issues in favor of the non-moving party for the purposes of the motion
for summary judgment.  As such, in its analysis of the duties owed by Defendant to
Plaintiff, the Court will consider Plaintiff's allegations related to both the alleged
lack of proper tread on the steps and the temporary handrail in the stairwell in
question.

"The 'turnover duty' relates to the condition of the ship upon the
commencement of stevedoring operations."  *Moore v. M/V ANGELA*, 353 F.3d 376,
380 (5th Cir. 2003) (*citing Scindia,* 451 U.S. at 167).  While there is some question

as to the exact date when the temporary handrail in question was installed, it is undisputed that the temporary handrail was installed by QCI after the commencement of the QCI work projects aboard the Noble Lester Pettus. *See* Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 17 (stating that "Noble personnel were also aware that the 2x4 handrail was installed at an early stage of the project..."); Def.'s Resp. to Pl.'s Statement of Uncontested Facts, p. 6 (stating "Admitted"). Plaintiff has asserted that Defendant was still in active control of the stairwell up until the time the stairwell area was completely taken out of service to install or repair items in that particular area, including new wall laminate. *See* Pl.'s Reply to Def.'s Mot. for Summ. J. at p. 6. This contention is irrelevant for the turnover duty analysis, because this duty relates to the condition of **the vessel** at the commencement of stevedoring operations, *see Moore*, 353 F.3d at 380, rather than the condition of piecemeal sections of the vessel, such as the stairwell, as work progresses. Thus, the turnover duty is not implicated by Plaintiff's allegations regarding the temporary handrail, as the temporary handrail was not yet in existence at the time QCI commenced its operations aboard the vessel.

Plaintiff has also asserted that the stairs in the stairwell lacked tread with a proper grip, which he alleges "created another unsafe condition which caused/and or contributed to Cole's fall and severe injuries." Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 36. It is undisputed that work to be done by QCI aboard the Nobel Lester Pettus included the installation of new Standard

Wooster stair treads.  Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 4; Def.'s Resp. to Pl.'s Statement of Uncontested Facts, p. 2.  However, it is not clear what, if any, work had been done to the treads of the steps in the relevant stairwell before Plaintiff's purported accident.  Construing the evidence in the light most favorable to the non-movant, as the Court must, the Court will assume for the sake of argument that the stair treads were in the same condition at the time of the vessel turnover, thus implicating Defendant's turnover duty under *Scindia*.

As discussed above, under *Scindia*, the vessel owes to a stevedore and its longshoremen employees the duty of exercising due care "under the circumstances." *Scindia*, 451 U.S. at 166 (*citing Federal Marine Terminals*, 394 U.S. at 415).  "This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property...." *Id.* at 166-67.

In the present case, Plaintiff does not dispute that the stairs in question were "diamond tread plate stair," *see* Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 33 (*quoting* Dep. of William Guidry, pp. 50-52), but Plaintiff contends that diamond tread does not have the same secure grip as provided by "Wooster" treads.  Plaintiff claims diamond treads constitute bare metal, which violates OSHA and ABS regulations.  *Id.*  However, this is an unsupported assertion by Plaintiff.  In his deposition, Mr. William Guidry, QCI's vice president of

-15-

engineering, explained that "diamond tread plate stair" means, "[i]t has a texture to it that provides some grip.  It's not just flat steel."  Dep. of Guidry, p. 51, Ex. "A-4" to Pl.'s Mem. in Supp. of Mot. for Summ. J.

Violations of OSHA regulations and ABS standards are not bases for negligence *per se* under the facts presented.  Nevertheless, in some cases, those regulations or standards might be applicable to establish the standard of care under a general negligence analysis.  *See Dixon v. International Harvester Co.*, 754 F.2d 573, 581-82 (5th Cir. 1985); *Rabon v. Automatic Fasteners, Inc.*, 672 F.2d 1231, 1238 (5th Cir. 1982); *Melerine*, 659 F.2d at 710-12.  As discussed previously, the OSHA regulations cited by Plaintiff are not relevant here.  As for the ABS standards, Mr. Guidry acknowledged that the ABS standard is the "industry standard" and would be applicable to the Noble Lester Pettus.  *See* Dep. of Guidry, pp. 28-29, Ex. "A-4" to Pl.'s Mem. in Supp. of Mot. for Summ. J.

However, no relevant ABS standards regarding the stair treads have been provided by Plaintiff, and no evidence has been presented as to the relevant standard of care with respect to stair treads.  Plaintiff makes general assertions regarding ABS requiring "proper treads," *see* Pl.'s Mem. in Supp. of Mot. for Summ. J., p. 5, and that the "bare metal" of the stairs was "contrary to OSHA and ABS requirements for treads,"  Pl.'s Reply to Def.'s Mot. for Summ. J., p. 7.  Plaintiff does not detail what tread is required to comport with the allegedly applicable ABS standards.

No evidence has been presented that use of the diamond tread on the subject

stairwells breached the applicable standard of care.  Plaintiff has presented no evidence that diamond tread provides less grip, nor that use of diamond tread on the stairs was unreasonably dangerous for a longshoreman.   Plaintiff repeatedly states that the stairs were "bare metal," which Plaintiff implies meant the stairs had no tread.  However, as discussed above, it is undisputed that the stairs themselves were not "bare metal," but were in fact textured with diamond tread.

Moreover, it is undisputed that part of QCI's renovation project on the Noble Lester Pettus was to add new, Wooster treads to the stairs.  There is no duty owed by a vessel owner to make a condition safe when the condition in question is the reason precipitating Plaintiff's employment.  *See Stass v. American Commercial Lines, Inc.*, 720 F.2d 879 (5th Cir. 1983); *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030, 1036 (5th Cir. 1977).  Plaintiff cannot succeed under a theory of liability based on a lack of Wooster treads in the stairwell when Defendant hired his employer, QCI, to add Wooster treads to the stairs in question.

In addition, there is an exception to the turnover duty where the dangerous condition is "open and obvious."  *See Scindia*, 451 U.S. at 167; *Pimental v. Ltd Canadian Pacific Bul*, 965 F.2d 13, 16 (5th Cir. 1992) (internal citations omitted).  Because the tread on the stairs in question (or lack of sufficient tread, according to Plaintiff's allegations) was open and obvious, which a longshoreman of reasonable competence should have seen, the vessel had no duty to warn of any purported danger associated with the treads on the stairs.

The Court notes that an open and obvious danger is not a complete bar to

-17-

liability for a breach of the turnover duty, *see Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997), as this exception to the turnover duty "does not apply, however, if the longshoreman's only alternatives to facing the hazard are unduly impracticable or time-consuming or would force him to leave the job." *Moore v. M/V ANGELA*, 353 F.3d 376, 381 (5th Cir. 2003) (internal citations omitted).  In the present case, Plaintiff has presented no evidence regarding any problems with alternatives to the alleged stair hazard, other than to state that the stairwell in question was "the only *internal* means of ingress and egress from the living quarters...."  Pl.'s Reply to Def.'s Mot. for Summ. J., pp. 25-26 (emphasis added); *see also*  Statement of Uncontested Facts in Support of Pl.'s Mot. for Summ. J., ¶ 6. Defendant has presented uncontroverted evidence that while there was only one *internal* stairwell between the main deck and where the crew quarters were being refurbished on the tween deck, there were actually two additional external stairwells that spanned between the upper and main decks which Plaintiff and others could have used.  *See* Dep. of Harold Keys, pp. 36, 44-48, Ex. "F" to Def.'s Mot. for Summ. J.   Plaintiff has not presented any evidence that using the alternate exterior staircases would be unduly impracticable or time-consuming or would have forced him to leave the job.  *See Moore*, 353 F.3d 381.  As such, there are no material facts in dispute regarding Defendant's turnover duty, and the Court finds that, as a matter of law, Defendant did not breach its turnover duty.

Moreover, even if Defendant had breached any turnover duty that may have been owed to Plaintiff with respect to the stair treads, the Court is of the opinion

-18-

that Plaintiff's claim of negligence must fail for lack of causation.  In order to

establish a *prima facie* case of negligence, in addition to proving a duty and breach

of duty, Plaintiff also must prove that the breach of duty was the proximate cause of

Plaintiff's injury and that damages to Plaintiff have resulted.  *See Dickey v. Baptist*

*Memorial Hospital-North,* 146 F.3d 262, 265 (5th Cir. 1998).  In the present case, no

causal link has been provided by Plaintiff between any purported defect in the stair

treads and his fall.  When asked during his deposition about what happened,

Plaintiff testified,

> I was carrying the boxes down the stairs.  I don't remember how I slipped.
> My foot slipped on the edge of the steps because they weren't very wide.
> And when I grabbed the guardrail, you know, I grabbed it tight to keep
> from falling–the guardrail goes down.  It's like a two-by-four screwed to
> little pieces of two-by-fours.  And when I grabbed it, the whole wall part
> on the bottom of it came off.  And then the top part of the rail broke, and
> it all fell on top of me, and I fell down the stairs.

Dep. of Plaintiff, p. 43, Ex. "C" to Def.'s Mot. for Summ. J.

> Then, when Plaintiff was asked what caused him to fall, he testified,

> I don't remember.  I stepped on the edge of the step kind of too far.  I don't
> remember how I fell.  I twisted my ankle.  I remember that much because
> it hurt real bad.  I guess that's what made me fall, stepping on the edge
> of the step too far out.

Dep. of Plaintiff, p. 45, Ex. "C" to Def.'s Mot. for Summ. J.

Without a causal link between the alleged unreasonably dangerous stair

treads and Plaintiff's accident, Plaintiff's negligence claims against Defendant

based on the condition of the stair treads must fail.

2.      "Active Control Duty"

Regarding the second *Scindia* duty, a vessel owner may be liable for injuries if it (1) "actively involves itself in the cargo operations and negligently injures a longshoreman," or (2) fails to exercise due care to protect longshoremen "from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation...." *Scindia*, 451 U.S. at 167.  "This duty recognizes that although a vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, no such cession results as relates to areas or equipment over which the vessel's crew retains operational control."  *Manuel*, 103 F.3d at 34 (*citing Pimental v. LTD Canadian Pacific Bul*, 965 F.2d 13 (5th Cir. 1992); *Masinter v. Tenneco Oil Co.*, 867 F.2d 892 (5th Cir.1989)).

This second *Scindia* duty applies to the vessel's responsibilities once stevedoring operations are underway. Once the work starts, the vessel owner has no general duty to monitor the stevedoring operation, "absent contract provision, positive law, or custom to the contrary," and it may rely on the stevedore's judgment that equipment is reasonably safe for continued use during the work.  *See Scindia*, 451 U.S. at 172.  "The shipowner, within limits, is entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise the cargo operations." *Id.*

Liability based on this duty is not relieved when the hazard is open and obvious.  *See Pimental*, 965 F.2d at 16 (*citing Masinter*, 867 F.2d at 897).  However,

if "a vessel has relinquished control over an area to the stevedore, then it is the primary responsibility of the stevedore to remedy a hazard in that area." *Id.* (*citing Turner v. Costa Line Cargo Services, Inc.*, 744 F.2d 505, 512-513 (5th Cir. 1984)).

In the present case, no evidence or arguments have been presented to show that Defendant was actively involved in the renovation project or that it was actively negligent or actively injured Plaintiff.  Rather, Plaintiff focuses on the second part of the duty, the alleged failure to exercise reasonable care in areas remaining under the active control of the vessel.

If the vessel relinquishes control over an area or a piece of equipment to the stevedore, the active control duty is extinguished. *See Pimental*, 965 F.2d at 16.  In the present case, Plaintiff has presented no evidence that Defendant failed to relinquish complete control over the stairwell and other areas on which renovations were being conducted, or that Defendant maintained control of operative details of the work.  This is particularly true in light of the facts that the renovation project indisputably included QCI installing new stair treads and a new handrail in the stairwell and that QCI, not Defendant, actually installed the temporary handrail. As such, Defendant did not breach any active control duty owed to Plaintiff, as Defendant did not have active control over the stairwell in question at the time of Plaintiff's purported accident.

The applicable contract provision in this case confirms that Defendant did not have actual control over QCI's work projects.  The terms of the Master Service Contract between Defendant and QCI clearly show that Defendant was not in active

control of the vessel during QCI's renovations.  In part, the agreement between

Defendant and QCI reads:

> This Contract shall control and govern all work performed, and/or goods
> or equipment provided, by Contractor for Noble under subsequent verbal
> and/or written work orders.  This Contract shall also control and govern
> the relationship of Noble and Contractor when Contractor, its employees,
> agents, representatives and/or subcontractors may be upon equipment
> and/or premises owned or controlled by Noble pursuant to an agreement
> with a person, firm or organization for whom Noble is also performing
> work or services.

Contract, Ex. "A" to Def.'s Mot. for Summ. J. at p.1.

In a section entitled "INDEPENDENT CONTRACTOR RELATIONSHIP,"

the Contract provides:

> In the performance of any work by Contractor for Noble, Contractor shall
> be deemed to be an independent contractor, with the authority and right
> to direct and control all of the details of the work, Noble being interested
> only in the results obtained.  However, all work contemplated shall be
> subject to the general right of inspection.  Noble shall have no right or
> authority to supervise or give instructions to the employees, agents, or
> representatives of Contractor, and such employees, agents or authorized
> representatives shall at all times be under the direct and sole supervision
> and control of Contractor.  Any directions given by Noble shall be given
> only by Noble's authorized representative at a well-site and only to the
> superintendent or other person in charge of Contractor's crew.  It is the
> understanding and intention of the parties hereto that no relationship of
> master and servant or principal and agent shall exist between Noble and
> the employees, agents, or representatives of Contractor.

*Id.* at p. 3.

Plaintiff contends that Defendant was in active control of the vessel because

of its alleged actions and encouragement of employees and contract workers to use

handrails, such as through its "STOP" safety program and safety orientation.

Plaintiff further asserts that Defendant's right to inspect QCI's work progress or its

conducting safety programs on the vessel somehow equates to active control, but this is not the case.  *See  Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997); *see also Fontenot v. McCall's Boat Rentals, Inc.*, 227 Fed. Appx. 397, 403-04, 2007 WL 1428985, *4 (5th Cir. May 14, 2007).  While it is true that Defendant had employees on the vessel evaluating the general scope of work being performed, *see* Dep. of Harold Keys, p. 128, Ex. "F" to Def.'s Mot. for Summ. J., and inspecting for unsafe conditions, and that Defendant's employees had an obligation to report any unsafe condition, even if created by an outside contractor, *see* Dep. of Dustin Stringer (safety training supervisor), pp. 36-37, Ex. "G" to Def.'s Mot. for Summ. J., such facts do not automatically lead to a finding of active control under *Scindia*.

As for Defendant's right to inspect the work progress, the evidence in this case, even if construed in the light most favorable to Plaintiff, does not tend to establish that the stairwell in question was within the active control of anyone other than the QCI.  No case law has been found nor provided by Plaintiff to support his assertion that Defendant's inspecting and monitoring the progress of the renovation constitutes active control for the purposes of the LHWCA.  Plaintiff also asserts that the Master Service Contract "required inspection by Noble."  Pl.'s Reply to Def.'s Mot. for Summ. J., p. 5.  Plaintiff attempts to equate this to active control.  However, the Master Service Contract clearly vests active control in QCI.  The Contract only left Defendant with "the general right of inspection" of the work.  Contract, Ex. "A" to Def.'s Mot. for Summ. J. at p. 3.  This general right of

inspection of the work does not rise to the level of operational control contemplated in *Scindia*.  As such, Defendant did not breach the second *Scindia* duty owed to Plaintiff.

      3.    <u>"Duty to Intervene"</u>

      The third *Scindia* duty applies to the vessel's responsibilities once stevedoring operations are underway.  In general, a vessel owner "may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards....  The ship is not the common employer of the longshoremen and owes no such statutory duty to them." *Id.* at 170.

      Under the duty to intervene, a vessel owner can be liable if it fails to intervene when it knows of an unreasonably dangerous condition that has developed during the course of the stevedoring operations and it knows that the stevedore, in the exercise of obviously improvident judgment, intends to continue working in the face of the danger and cannot be relied upon to protect its workers. *See Scindia*, 451 U.S. at 175-76.

      With respect to knowledge of an alleged unreasonably dangerous condition, the Fifth Circuit has noted that "[t]here is a distinction between knowledge of a condition and knowledge of the dangerousness of that condition." *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990).  In the present case, no evidence has been presented that Defendant had *actual knowledge* that the stair treads or temporary handrail posed an unreasonable risk of harm.  The Fifth Circuit has determined that the "[m]ere presence of the shipowner's employees on the ship does not prove

-24-

knowledge of a dangerous condition." *Futo v. Lykes Bros. Steamship Co.*, 742 F.2d 209, 220 (5th Cir. 1984) (*citing Hill*, 674 F.2d 447).

"Furthermore, actual knowledge of a dangerous condition does not in and of itself render the vessel's failure to act negligent. [The Fifth Circuit] has noted that in some situations the vessel owner is entitled to rely on the stevedore's judgment that the condition, though dangerous, was safe enough." *Randolph*, 896 F.2d at 971 (*citing Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1039 n. 12 (5th Cir. 1983)) . The vessel owner's obligation to intervene under the third Scindia duty "is narrow and requires 'something more' than mere shipowner knowledge of a dangerous condition." *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 28 (5th Cir. 1996). In the present case, Plaintiff has not shown that Defendant had actual knowledge of a purported unreasonably dangerous condition, nor has the requisite "something more" been shown.

Assuming that Defendant did know that the stair treads or temporary handrail were unreasonably dangerous, the next question is whether the Defendant knew that QCI, in the exercise of obviously improvident judgment, intended to continue working in the face of the danger and could not be relied upon to protect its workers. *See Scindia*, 451 U.S. at 175-76. Even if Defendant did have actual knowledge of an allegedly unreasonably dangerous condition in the stairwell, no evidence has been presented that Defendant had *actual knowledge* that it could not rely on QCI to protect its employees, and that, if unremedied, the condition posed a substantial risk of injury.

-25-

The Fifth Circuit has interpreted "obviously improvident" as meaning that an expert stevedore "must use an object with a defective condition that is so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken into account." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (*citing Randolph*, 896 F.2d at 971; *Woods*, 873 F.2d at 847).  Here, the deposition testimony makes clear that use of a 2" x 4" as a temporary handrail was a standard practice for QCI, and QCI did not discuss using this particular type of handrail with any employees of Defendant.  *See* Dep. of Louis Michka, p. 27, 39-40, Ex. "D" to Def.'s Mot. for Summ. J.  According to the uncontradicted deposition testimony, prior to the date of Plaintiff's alleged fall, no other accidents were reported on the stairwell in question, nor had any complaints regarding the stairwell been received by Defendant.  *See* Dep. of Harold Keys, p. 140, Ex. "F" to Def.'s Mot. for Summ. J.  Such uncontradicted evidence makes clear that Defendant relied upon QCI's expertise, and that neither the treads nor handrail were so hazardous that anyone could tell that their continued use created an unreasonable risk of harm, as required by *Greenwood.  See* 111 F.3d at 1249.

In *Scindia*, the Supreme Court held that "absent contract provision, positive law, or custom to the contrary...the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." *Scindia*, 451 U.S. at 172; *see also Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 100-01 (1994).  "The rule relieving vessels from this general

duty rests upon 'the justifiable expectations of the vessel that the stevedore would perform with reasonable competence and see to the safety of the cargo operations.'" *Howlett*, 512 U.S. at 101 (*quoting Scindia*, 451 U.S. at 172). *Scindia* reasoned that a vessel owner nonetheless could be liable under section 905(b) of the LHWCA if it had actual knowledge of a dangerous condition present during the stevedoring operation and actual knowledge that the stevedore was not acting to correct it. *See Scindia*, 451 U.S. at 175-76. Plaintiff has not presented evidence of Defendant's actual knowledge of either of these elements.

In the present case, Defendant relied on the expertise of QCI, Plaintiff's employer. QCI was hired, in part, to install treads on the stairs and replace the handrail in the stairwell, and QCI installed the temporary handrail which allegedly caused or contributed to Plaintiff's fall. The stairwell was under the exclusive control of QCI, Plaintiff's employer. Under such facts, Defendant would have no duty to intervene. *See Futo v. Lykes Bros. Steamship Co., Inc.*, 742 F.2d 209 (5th Cir. 1984).

As the Supreme Court determined in *Scindia*, section 905(b) of the LHWCA places the primary responsibility for the safety of the longshoreman upon the stevedore, QCI in this case. Defendant here had no duty to intervene. Therefore, Defendant did not breach any duty owed to Plaintiff under the facts of this case.

### III. <u>CONCLUSION</u>

The Court finds that there are no genuine issues of material fact in this case. Because it is clear, as discussed herein, that Defendant did not breach any duty it

may have owed to Plaintiff, Defendant is entitled to judgment as a matter of law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons cited herein, the Motion of Plaintiff, Fred Cole, for Summary Judgment filed April 20, 2007 [58-1],  should be and is hereby **DENIED**.

**IT IS, FURTHER ORDERED AND ADJUDGED** that, for the reasons cited herein, the Motion of Defendant, Noble Drilling Corporation, filed April 20, 2007 [50-1], should be and is hereby **GRANTED,** and all claims asserted against Defendant Noble Drilling Corporation are hereby dismissed with prejudice, with each party to bear its own costs.

**SO ORDERED AND ADJUDGED**, this the 28th day of August, 2007.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE